**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CASEY E. GRANIERI**<br><br>　　　　　**Plaintiff,**<br><br>　　　**v.**<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　　　　**Defendant.** | **Civil Action No. 19-11268 (ES)**<br><br>**OPINION** |

**MᴄNᴜʟᴛʏ, Dɪꜱᴛʀɪᴄᴛ Jᴜᴅɢᴇ**

This matter comes before the Court on the appeal by Plaintiff Casey Granieri ("Plaintiff") of the final decision of the Commissioner of Social Security awarding him partial disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This matter was reassigned from Judge Salas to me for purposes of this opinion. Having considered the submissions of the parties without oral argument, I will **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**[1]

**Procedural History**

This appeal arises from Plaintiff's application for DIB, alleging disability beginning October 11, 2013. Plaintiff was involved in two motor vehicle accidents in 2009. He underwent two back surgeries in 2009 and 2010 to correct herniations and bulged disks. (R. at 340, 354, 408.) In April 2013, while biking, Plaintiff was struck by a car. (R. at 334.) On January 31, 2014, Plaintiff

---

[1] Citations to the record are abbreviated as follows:

　　　Complaint = Plaintiff's complaint, DE 1

　　　R. = Administrative Record (DE 6)

　　　Pl.'s Br. = Mr. Granieri's Brief (DE 15)

　　　Def's Br. = the Commissioner's opposition brief, (DE 16)

filed claims for DIB for complained of bulging discs in his neck and low back, herniated discs in his low back, pinched nerves in his spine, surgically repaired knees, claiming a need for future neck surgery, asthma, testosterone deficiency, and a torn right shoulder. (R. at 7-8; *id.* at 64, 77; Def's Br. at 2.) Plaintiff's claims were initially denied on June 3, 2014 and denied a second time upon reconsideration on January 23, 2015. (R. at 76, 90.)  Plaintiff requested a hearing, which took place before Administrative Law Judge ("ALJ") Ricardy Damille on January 17, 2017. (*Id.* at 36-63.) The hearing also included an impartial vocational expert (VE) who testified. (*Id.*; Def's Br. at 2.) The day after the hearing, ALJ Damille sent additional interrogatories to the VE. (R. at 320-25). Plaintiff exercised his option for a supplemental hearing based on the VE's answers to the additional interrogatories. (*Id.* at 328.) ALJ Damille held a second hearing on June 30, 2017 (R. 320-24; Def's Br. at 2) and on September 8, 2017, denied a finding of disability. (R. at 17–34.) Plaintiff then sought review from the Appeals Council and, on March 8, 2019, the Appeals Council issued a partially favorable decision finding Plaintiff disabled beginning November 2, 2014. (R. at 7-11.) The ALJ's decision, as modified by the Appeals Council, was the final decision of the Secretary. Plaintiff filed his current appeal before this Court on April 25, 2019.

## II.    STANDARDS AND THE SECRETARY'S DECISION

### A.    The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the Commissioner

inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. In doing so, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923, 416.924a(b)(4), 416.926a(a) and (c). If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

**B.      The ALJ Decision as Modified by the Appeals Council**

In overview, the Appeals Council adopted ALJ Damille's findings at step
one through step three. (R. at 8.) At step four, however, the Appeals Council
found that "it could not adopt the findings … for any portion of the period at
issue." (*Id.* at 7.) The Appeals Council changed the decision by awarding
Plaintiff DIB as of November 3, 2014—the date Plaintiff reached age 55. (*Id.*)
For the period before Plaintiff's 55th birthday, the Appeals Council advanced to
step five in the sequential evaluation process. For the period before November
3, 2014, it determined that Plaintiff could perform other jobs that existed in
significant numbers within the national economy. (*Id.*)

In more detail, at step one, ALJ Damille found that Plaintiff had not
engaged in substantial gainful activity since the alleged disability onset—
October 11, 2013. (R. at 7, 103.)

At step two, ALJ Damille concluded that Plaintiff had the following severe
impairments: herniated cervical and lumbar spine status-post discectomy in
the lumbar spine, status-post cervical fusion, cervical radiculopathy, medial
meniscal tears in the bilateral knees, and status-post arthroscopic surgeries in
the bilateral knees. (*Id.* 8, 103). Considering these severe impairments, ALJ
Damille found Plaintiff capable of performing light work as defined in 20 CFR
404.1567(a) except that Plaintiff could lift and carry ten pounds and could
stand or walk for four hours in an eight-hour workday, among other
limitations. (*Id.*)

At step three, ALJ Damille found that Plaintiff did "not have an
impairment or combination of impairments that meets or medically equals the
severity of one of the listed impairments in 20 CFR Part 404, Subpart P,
Appendix 1 (20 CFR 404.51(d), 404.1525 and 404.1526." (*Id.* at 8, 104). He
gave special consideration listings under section 1.02 *Major dysfunction of a
joint(s) (due to any cause)* and 1.04 *Disorders of the spine*. (*Id.*). ALJ Damille
concluded that the record failed to establish that Plaintiff met or medically
equaled those listings. (*Id.*). In so finding, ALJ Damille found no evidence

4

indicating that Plaintiff suffered from "a gross anatomical deformity and signs of chronic joint pain and stiffness, with corresponding range of motion limitations … no evidence of nerve root impingement characterized by neuro-anatomic distribution of pain with corresponding loss of sensation or reflexes" or "spinal arachnoiditis or spinal stenosis resulting in pseudoclaudication." (*Id.*) He also found Plaintiff effectively ambulatory in his upper and lower extremities pursuant to listing sections 1.00(B)(2)(b)(2) and 1.00 (B)(2)(c). (*Id.*)

Thus far, the Appeals Council upheld ALJ Damille's findings.

On review of ALJ Damille's step four findings, however, the Appeals Council determined the ALJ erred when he considered Plaintiff's past work as a salesman. (R. at 8.) Examining Plaintiff's historical earnings records, the Appeals Council found he had not performed work as a salesman for "just over fifteen years" and last performed such work in 2002. (*Id.*) For this reason, the Appeals Council concluded that this sales work could not be considered under 20 CFR 404.1565(a), because Plaintiff did not perform it "within the vocationally relevant past (last fifteen years)." (*Id.*) The Appeals Council also found that Plaintiff's past work as a chef could not be considered because he did not perform it "long enough to learn it" under 20 CFR 404.1565(a). Still, the Appeals Council agreed with ALJ Damille's overall conclusion that Plaintiff could not perform his past relevant work based on his assessed RFC, and proceeded to a step five analysis. (*Id.*)

At step five, the Appeals Council concluded that, from October 11, 2013 to November 2, 2014, Plaintiff could perform other work at "a reduced range of the light exertional level" for jobs established by the VE such as "ceiling machine operator, a microfilm operator, and a sewing machine operator." (R. at 9.) As of November 3, 2014, however, the Appeals Council determined Plaintiff reached "advanced age." Coupling that fact with his education and past relevant work, the Council concluded he did not possess any transferable work skills. (*Id.*) The Appeals Council, accordingly, found Plaintiff disabled within the

meaning of the Act and awarded him DIB for the period beginning November 3, 2014. (*Id.*)

### III.    DISCUSSION

Plaintiff appeals from the adverse portion of the Secretary's decision. The discussion herein should be understood to apply to the period October 11, 2013 to November 2, 2014, for which benefits were denied, unless otherwise specified.

Plaintiff's central argument is that the RFC determination at step four was not based on substantial evidence. He contests that determination on two grounds: (1) the evidence contradicts the RFC finding that he could perform a reduced range of light work between October 11, 2013 to November 2, 2014; and (2) the ALJ erred by giving little weight to the opinions of "all" treating physicians. (Pl.'s Br. at 11–31.) Plaintiff also challenges the award of benefits. He claims that the Appeals Council erred by applying his age in a "mechanical" fashion when it awarded Plaintiff DIB commensurate with his 55th birthday. (*Id.*) That decision, he contends, violated "the Commissioner's own published policy" against applying a claimant's age mechanically. (*Id.* at 33.) Had it not been for the supposed error, Plaintiff argues, the Appeals Council should have used its discretion under the rules to award him benefits "up to 6 months earlier" because he could not perform light work before or after his neck fusion surgery in July 2014. (*Id.* at 34–35.) In opposition, the Commissioner argues that the RFC determination adopted by the Appeals Council is appropriately supported by substantial evidence. (Def.'s Br. at 17–23.) The Commissioner also argues that the decision to award Plaintiff benefits as of his 55th birthday does not represent a borderline age situation under the rules. (*Id.* at 26.)

### A.    Step Four – Whether Plaintiff's Assessed RFC Was Based on Substantial Evidence

Plaintiff's first argument is straightforward: he claims he could not perform light work during the relevant period. Concerning his physical impairments, Plaintiff quotes large portions of the Appeals Council's decision

adopting ALJ Damille's reasoning and then argues against it by referencing supposedly contradictory evidence included in the medical record. (Pl's. Br. at 14–17.) For example, Plaintiff refers to his knee surgeries and an unspecified neurological exam[2] that found he "walked slowly, had decreased grip strength, decreased sensation in the left hand, median nerve pathology of both wrists, pain to the touch in his mid to lower back and neck muscles and pain with movement of his neck along with continued pain in both knees." (Pl's. Br. at 18.) Plaintiff also argues that in "mid-July" 2014 his knees still bothered him and that several steroid injections to his back, while improving his pain by 75%, did not provide relief for his neck pain. (*Id.*)

However, other than expressing disagreement with the ALJ's determination, he does not argue that his impairments meet a specific Listing. Furthermore, Plaintiff makes no attempt to meet his heavy burden at step four demonstrating why the select evidence he cites would change the outcome. Instead, out of a voluminous medical record, Plaintiff points to evidence that supposedly contradicts the ALJ's findings and broadly characterizes the analysis as "unexplained," based on "medically improbable abilities" (R. at 15–19) and accuses the ALJ of committing a "goal-directed deconstruction of the evidence." (*Id.* at 26.) He also claims there is a "sheer lack of evidentiary explanation" to the ALJ findings. (*Id.* at 31.) To be clear, I reject Plaintiff's characterizations. Plaintiff invites the Court to reweigh the evidence that supports or negates a finding of disability. I must decline to do so.  The substantial evidence standard prohibits the Court from weighing the evidence or substituting "its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. Even when the record includes evidence that supports a contrary conclusion, such evidence "does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). The Commissioner,

---

[2] Plaintiff is apparently referring to the examination of Dr. Haidri, who noted that he walked slowly and expressed his neck movement caused pain. (R. at 357.)

here, aptly provides that support; the ALJ appropriately weighed the evidence of disability, pro and con.

For example, the ALJ quoted the very medical report of Dr. Haidri that Plaintiff relies on to contradict the RFC determination. That report noted Plaintiff's back surgeries in 2009 and 2010 and explained that after receiving "medical care for about a year" Plaintiff's "symptoms subsided." (R. at 105; *Id.* at 357; Def's Br. at 16.) Also, the ALJ cites to a July 2014 report from Plaintiff's surgeon, Dr. Emami, who performed Plaintiff's cervical fusion surgery and quoted the Plaintiff as being "extremely happy with the outcome of the surgery." (R. 105-06; Def's Br. at 16.) The ALJ's decision furthermore considered Plaintiff's alleged symptoms and limitations and history of treatment. The ALJ noted that treatment records showed "the claimant's symptoms waxed and waned, but his symptoms were overall stable after his final surgery in 2014." (*Id.* at 106). He pointed to the report of a state medical consultant, Dr. Shahinian, that found Plaintiff's afflictions limited him "to an eroded form of light exertional work because of his physical impairments." (R. at 107). The ALJ also considered Plaintiff's "wide range of activities" that included biking for physical therapy, going to the diner, socializing with family and friends, driving, and taking care of himself. (*Id.* at 108, 263-67; Def's Br. at 17).

Following Plaintiff's final surgery in 2014, the ALJ pointed out, he received acupuncture treatments from Dr. Yang for continued neck, back, arm, and hand pain with numbness and tingling. (R. at 106.) This treatment improved Plaintiff's symptoms. (*Id.*) Plaintiff reported to Dr. Yang that his "lower back was much better after acupuncture" and his elbow range of motion improved. (*Id.* (citing R. at 602-05, 614.))

Based on the foregoing, the thrust of Plaintiff's argument that the ALJ's RFC analysis is "both unexplained and medically improbable" is rejected. (Pl's. Br. at 16.) Plaintiff has not cited to any evidence necessitating a different conclusion, or to any failure to take relevant evidence into consideration. The

RFC determination—adopted by the Appeals Council—is supported by substantial evidence. This finding is sustained.

**B.      Opinions of Treating Professionals**

Plaintiff next contests the Commissioner's decision by alleging that "every treating physician's opinion … [was] rejected" by the ALJ. (Pl's. Br. at 20.) More specifically, Plaintiff argues that all treating physicians opined that Plaintiff was limited to sedentary work and could not perform light work, but their conclusions were impermissibly rejected. (*Id.* at 24.) Here, Plaintiff refers to the opinions of Drs. Wolkstein, Bonsall, and Haidri. The Commissioner argues the ALJ appropriately considered the opinions of treating physicians and reasonably assigned them weight based on support and consistency with the record. (Def's Br. at 17.)

A treating physician's opinion "does not bind the ALJ." *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011). When assigning weight to a treating physician's opinion, the ALJ must demonstrate that he or she has considered it and explain why it was or was not given weight. In general, a treating physician's opinion carries greater weight than that of a one-time consultant, especially one who has not examined the patient. However, where an opinion is not supported by the clinical evidence, is internally inconsistent, or is inconsistent with evidence in the record, the ALJ may choose not to assign a medical opinion controlling weight. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2). That weighing process, however, cannot be assumed, but must appear in the record: "[If] the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). I find under the foregoing standards that the ALJ properly considered the opinions of Plaintiff's treating physicians.

The ALJ began by comprehensively summarizing the period of treatment that encompasses the opinions of Drs. Wolkstein, Bonsall, and Haidri. He

summarized the treatment Plaintiff received before he stopped working on October 11, 2013—the alleged disability onset date—through his final surgery in 2014. (R. at 105–06.) He noted Plaintiff's lumbar, cervical spine, and neck treatment history "which included physical therapy, steroid injections, and surgery." (*Id.* at 105.) He discussed Plaintiff's alleged symptoms whose "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found Plaintiff's statements "concerning the intensity, persistence and limiting effects … not entirely consistent" with the evidence. (*Id.*)

He first addressed the April 2014 opinion of Dr. Wolkstein, the knee surgeon and pain management physician who provided Plaintiff's steroid injections. (R. at 106, 448.) The ALJ explained that he gave Dr. Wolkstein's opinion little weight because other evidence of record weighed against the degree of limitation Dr. Wolkstein ascribed to Plaintiff. For example, the ALJ highlighted Dr. Wolkstein's opinion that Plaintiff could not carry weight above five pounds, but noted that Plaintiff himself testified that he could lift ten pounds or "at least a gallon of water, which is heavier than five pounds." (*Id.* at 108 (citing R. at 49, 448).) On the other hand, Dr. Wolkstein stated that Plaintiff "had no sitting limitation, an opinion which, the ALJ found, contradicted "one of the main reasons" Plaintiff claimed he could not perform sedentary work. (*Id.* at 108). The ALJ also pointed to Plaintiff's testimony that he drove "often" as tending to prove he could perform more than sedentary work. (*Id.* (citing 54, 266).)

Similarly, the ALJ found Dr. Haidri's opinion inconsistent with other medical evidence. (*Id.* at 108.) Dr. Haidri opined that "claimant would need to spend most of the day reclining because he was unable to sit, stand, or walk for less than eight hours." The ALJ juxtaposed this assertion with Plaintiff's testimony about his "wide range of activities" that included socializing with friends and family. (*Id.*) Furthermore, the ALJ determined that, even with a

"liberal reading" of Dr. Haidri's treatment notes, they did not adequately explain the doctor's conclusions. (*Id.* (citing 347-48, 353-63).)

Finally, Dr. Bonsall, Plaintiff's chiropractor, referred the ALJ to his "office notes" to explain his April 2014 opinion that Plaintiff was limited to lifting only five pounds, standing or walking up two hours per day, and sitting less than six hours per day. (*Id.* at 108 (citing R. at 470-71).) The ALJ similarly found Dr. Bosnall's opinion "not well supported" and "inconsistent" with other evidence in the medical record. (*Id.* at 108.) The Commissioner further points out that Dr. Bonsall concluded that Plaintiff did not have issues gripping, making a fist, walking on his heels and toes, and observed no notable muscle weakness.[3] (Def's Br. at 20); (R. at 470-73.)  This, it is noted, is incongruent with Dr. Haidri's March 2014 notes, recorded less than a month earlier, where Plaintiff reported "numbness" and "weakness" in his hands. (R. at 358.)

Throughout his decision, the ALJ relied on other medical sources—including treating physicians other than those named above—to make his findings. He cited Plaintiff's post-operative evaluation with Dr. Arash Emami, who treated Plaintiff for his cervical impairments, during which Plaintiff expressed happiness with the outcome of his surgery. (R. at 106); (*Id.* at 369.) The ALJ also gave partial weight to two state agency medical consultants, Dr. Shahinian and Dr. Andrew Przybyla, who reviewed the medical record and agreed Plaintiff could perform light exertional work with "many of the same limitations accounted for in" the RFC. (*Id.* at 107.) He also observed that Plaintiff's own statements to doctors were inconsistent, *i.e.,* that he "denied having the same symptoms across providers." (*Id.*)

Returning to Plaintiff's argument, I cannot agree that there is a "sheer lack of evidentiary explanation for the reduced light work RFC." (Pl.'s Br. at 31.) I reject his assertion that the Commissioner presented a "ridiculous set of undefended assumptions and conclusions." (*Id.* at 14). The ALJ credibly gave

---

[3] Dr. Bonsall completed a Passive Range of Motion Chart (R. at 472) and scored Plaintiff's grip and pinch strength as a five out of five (5/5); his "muscle weakness" was rated a five indicating "normal" strength in right and left extremities. (*Id.* at 473.)

his reasons for discounting the three opinions from Wolkstein, Haidri, and Bonsall and explained why those opinions did not bind him. He was entitled to give greater weight to other evidence where he found inconsistencies or insufficient clinical evidence from those sources. I therefore affirm the step four findings as modified by and adopted by the Appeals Council.

### C.    Borderline Age Situation

I quickly dispense with Plaintiff's third asserted ground. Plaintiff posits that the Appeals Council's disability onset date of November 3, 2014—the date Plaintiff reached age 55—presents a borderline age situation. He claims the Appeals Council improperly utilized the Medical-Vocational Guidelines, or "Grids," in a mechanical fashion by awarding Plaintiff benefits and did so without explanation. (*Id.* at 34.) Plaintiff laments that the Appeals Council "had the discretion to award benefits up to 6 months earlier" but "didn't do it and they didn't explain why it was not appropriate" to do so. (*Id.* at 35.) This claim lacks merit. No borderline age situation exists here.

The Commissioner's regulations state:

> [w]e will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."

20 C.F.R. § 404.1563(b).

The regulations define a borderline age issue as follows:

1. The claimant reached or will reach the next higher age category within a few days to a few months after the . . . date of adjudication" . . . ; and

2. Using the claimant's chronological age results in a not disabled determination; and [u]sing the next higher age category to adjudicate the borderline period results in a disabled determination.

However, "[i]f using the claimants chronological age results in a partially or fully favorable determination, only consider the claimant's chronological age. This is not a borderline age situation." *See* Commissioner's Program Operations Manual System, DI 25015.006 (Borderline Age); (Def's Br. at 26).

Here, Plaintiff was not within a few days or months of reaching an older age category. The Appeals Council applied Plaintiff's actual age, which resulted in a partially favorable determination. The September 2017 decision awarding him partial benefits came well after Plaintiff attained advanced age under the rules. The Appeals Council found Plaintiff disabled when he reached an age that triggered the advanced age category. Thus, no borderline age category existed.

## CONCLUSION

The ALJ's decision was legally correct and supported by substantial evidence. It is affirmed.

Dated: February 18, 2021

/s/ Kevin McNulty
_____
KEVIN MCNULTY, U.S.D.J.